IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JERRY GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-874-ALB |
| ) | |
| HENRY COUNTY COMMISSION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the court on Defendant Henry County Commission's Motion for Partial Dismissal of Plaintiff's Complaint. (Doc. 7). Upon consideration, the Commission's motion is GRANTED.

**BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the operative complaint and are assumed to be true for the purposes of this opinion.

Plaintiff Jerry Green, a black male, worked for the Commission as one of two custodians at the Henry County Courthouse from February 2006 until the Commission voted to eliminate his position effective May 2, 2017. At the time he was terminated, Green was sixty years old. (Doc. 1 ¶¶9–13).

Jerry Whitehead, a white male and Green's supervisor, allegedly treated Green adversely and harassed him based on his race. Specifically, Whitehead told

Green not to order supplies or call technicians, criticized and disparaged Green, and made numerous attempts to discipline him. (Doc. 1. ¶¶15–23). In response to Whitehead's alleged abuse, Probate Judge JoAnn Smith (then-chairperson of the Commission) told Whitehead to leave Green alone and specifically to stop disciplining and ordering him around. (Doc. 1 ¶¶24–26). When Smith retired, she was replaced by Probate Judge David Money. With the change in management, Whitehead again began scrutinizing and disciplining Green, including speaking to him in a harsh and demeaning tone and frequently interrupting his work. Whitehead also frequently encouraged Green to quit. When Green complained, Judge Money told him to do as Whitehead instructed. Eventually, the Commission changed Green's supervisor to Ronnie Dollar. (Doc. 1 ¶¶27–37).

The Commission voted to eliminate Green's position on April 11, 2017 and notified Green that same day he would be placed in layoff status effective May 2, 2017, with his benefits terminating on May 31, 2017. The Commission said it was terminating Green because there was insufficient work for two full-time custodians. Judge Money and Dollar later told Green there were insufficient funds to continue his employment, which made Green suspicious because his salary had already been approved in the budget passed in September 2016. (Doc. 1 ¶¶38–42). On or about April 22, 2017, Dollar also told Green he could help him get his job back if he would do what he was told. (Doc. 1 ¶44). Green attended the Commission's meeting on

2

May 9, 2017, where he complained he had not been afforded due process and that his salary had already been approved for the 2017 fiscal year budget. (Doc. 1 ¶¶43, 44–45).

Following Green's termination, the Commission hired numerous employees who were substantially younger than Green, had not complained of discriminatory treatment by the Commission, or were of a different race than Green. (Doc. 1 ¶48).

Green filed discrimination charges with the EEOC on November 14, 2017. (Doc. 1 ¶9). He then sued the Commission on four counts: Count I, 42 U.S.C. §1981/Title VII Retaliation (Termination); Count II, ADEA Age Discrimination (Termination); Count III, Title VII Race Discrimination (Termination); Count IV, 42 U.S.C. §1981 Race Discrimination (Termination). In response, the Commission electronically filed its Answer and a partial motion to dismiss Green's claims that relied on Title VII and the ADEA.[1] The Court/Clerk docketed the Answer first and then the Rule 12(b)(6) Motion.

## DISCUSSION

The Commission is moving for partial dismissal of Green's Complaint under Rule 12(b)(6) for not filing his charge of discrimination with the EEOC within six months as required by Title VII and the ADEA. Green did not address the merits of

---

[1] Count I relies on both Title VII and 42 U.S.C. § 1981. Insofar as Count I relies on Title VII, it is susceptible to the Commission's partial motion to dismiss. Count II relies on the ADEA and Count III relies on Title VII, so both these counts are subject to the Commission's motion.

3

the Commission's motion, opting instead for a procedural attack on the grounds that the motion was filed simultaneously with the Commission's Answer, with the Answer being docketed first. Green argues that under the plain language of Rule 12(b), the Commission waived its right to file a motion under Rule 12(b)(6) when it filed its Answer.[2] Because its Answer was docketed before the partial motion to dismiss, Green argues that the court cannot rule on the merits of the motion to dismiss.

Green's argument is based on a misreading of *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 971 n.6 (11th Cir. 2002) and *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002).[3] The Court in *Skritch* held that the district court did not err in denying a successive motion to dismiss as procedurally improper when it "assert[ed] qualified immunity [and] was filed more than three months after the defendants' answer had been filed and after two prior motions to dismiss, both of which had omitted this defense and both of which had been denied." *Id*. at 1306. For its part, the Court in *Leonard* concluded that the district court lacked subject matter

---

[2] By failing to respond to the motion's merits, Green has waived that issue.

[3] Upon reviewing the parties' briefs, the Court ordered supplemental briefing on two questions:
    1) The district court cases cited by Plaintiff Jerry Green rely on *Leonard v. Enterprise Rent a Car*, 279 F.3d 967 (11th Cir. 2002) and *Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002). How do the changes in Rule 12 between 1997 and 1998, the years of the underlying cases in *Leonard* and *Skrtich*, and 2019, the year of the present case, affect the applicability of *Leonard* and *Skrtich* and any cases relying upon them?
    2) Does Wright & Miller, Federal Practice & Procedure §1361 Timing of Rule 12(b) Motions reflect the correct interpretation of Rule 12 as presently written?

jurisdiction and merely noted in dicta in a footnote that the defendant's motions to dismiss had been filed late. *Leonard,* 279 F.3d at 71 n.6.

Despite Green's arguments, a district court may exercise its best judgment about whether to resolve the parties' merits arguments when a motion to dismiss is docketed immediately after an answer. The advent of e-filing has resulted in significant changes to how pleadings are filed and docketed since *Leonard* and *Skrtich*. In some cases, attorneys dictate the order in which simultaneous filings are docketed. *See, e.g.*, *Mitchell v. Ala. DOL*, 2018 WL 4621928, at *3 (M.D. Ala. Aug. 29, 2018) (noting that defendant's attorney filed answer and motion; documents were not docketed by Clerk of Court). When the attorney dictates the order in which simultaneous filings should be docketed, he should generally live with the consequences of his decision. *Id.* at *4 (denying motion to dismiss as untimely because attorney chose order in which filed). But where the Clerk of Court dockets the answer before the motion to dismiss without input from the defendant or an attorney, the timeliness issue should not turn on which document the Clerk happens to docket first.

There are three ways a court can treat a simultaneously filed answer and motion to dismiss when the answer is docketed before the motion. Wright & Miller, Fed. Prac. & Proc. §1361. First, some courts will simply assume that a simultaneously filed answer and motion to dismiss were filed in the proper order.

5

*See, e.g.*, *Invamed, Inc. v. Barr Labs.*, 22 F. Supp. 2d 210, 215 (S.D.N.Y. 1998) (no prejudice when motion and answer filed simultaneously because "that very filing puts the plaintiff on notice that the defendant is not waiving its right to assert the motion[ ]"); *Contois v. State Mut. Life Assur. Co.*, 66 F. Supp. 76, 77 (N.D. Ill. 1945). Second, Rule 12(i) states that "[i]f a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion . . . must be heard and decided before trial unless the court orders a deferral until trial." Fed. R. Civ. P. 12(i). Accordingly, some courts will address the merits of the motion under Rule 12(i), so long as the party included the basis of the motion to dismiss in its answer. Third, Rule 12(h) states that a party may raise a legal defense to a claim in any pleading, in a motion, or at trial. So, even if a Rule 12(b)(6) motion is itself untimely, the arguments have not been waived and may be considered. For example, a court may construe a putative Rule 12(b)(6) motion as a Motion for Judgment on the Pleadings or for Summary Judgment. *See, e.g.*, *Skrtich*, 280 F.3d at 1307 n.13 (noting that a belated 12(b)(6) motion "may be construed as a request for judgment on the pleadings").

Reading Rule 12 in this manner creates a safe harbor for the exercise of judicial discretion. In some cases, a court will exercise its discretion to prevent apparent gamesmanship. For example, in *Skrtich v. Thornton*, the defendants raised a qualified immunity defense in their Amended Answer, then filed a motion for

summary judgment on the basis of qualified immunity. 280 F.3d 1295, 1305 (11th Cir. 2002). Before the hearing on the motion, two of the defendants withdrew from the motion and then one month later filed a motion to dismiss based on qualified immunity. *Id.* The court held that the defendants' tactics of raising qualified immunity at multiple stages of litigation—with each denial generally entitling them to an immediate appeal—had waived their qualified immunity defense at the pretrial stage. *Id.* at 1306–07.

A district court can also use its discretion to promote judicial economy. In *Canal Insurance Co. v. INA Trucking, LLC*, for example, the court declined to convert an untimely Rule 12(b)(6) motion into a motion for judgment on the pleadings because the defendant did not provide any support for the motion. 2017 WL 1146984, at *9 (M.D. Ala. Mar. 10, 2017). Further, the court found the defendant would not be prejudiced because the defendant could make the same arguments in a motion for judgment on the pleadings, a motion for summary judgment, or at trial.

Here, the Court will exercise its discretion to consider the motion to dismiss even though it was docketed after the answer. There is no indication that the Commission purposefully filed its answer first, as the attorneys did in *Mitchell*. Nor does it appear the Commission is engaging in gamesmanship. Addressing the timeliness of Green's EEOC complaint now is in the interests of judicial economy

because the Commission could raise this issue again later, with any effort spent on this issue between now and then wasted.[4]

Both Title VII and the ADEA require an employee to file a charge of discrimination within 180 days after an unlawful practice occurs. 29 U.S.C. §626(d)(1)(A); 42 U.S.C. §2000e-5(e)(1). But if the discrimination charges are untimely filed, then they are "no longer actionable." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Green argues that he should be able to use May 31, 2017, the date his benefits were terminated, as the date of the alleged unlawful practice. This date would permit him to file charges with the EEOC by November 27, 2017. But the date of discrimination is focused "upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (quotations omitted). The termination of Green's benefits on May 31, 2017 was merely the final consequence of the initial act of terminating him. Because the Commission terminated Green on April 11, 2017, the last day to file was October 9, 2017. So,

---

[4] The Court could also proceed to consider the Commission's arguments under Rule 12(i) because the Commission included the basis for its Rule 12(b)(6) motion in its answer. (Doc. 6 at 7). Rule 12(i) states that "[i]f a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial." Fed. R. Civ. P. 12(i).

Green's November 14, 2017 filing was untimely.[5] Because Green's EEOC filing was untimely, Green's claims under Title VII and the ADEA are due to be dismissed.

## CONCLUSION

Based on the above reasoning, the Commission's Partial Motion to Dismiss is GRANTED. Counts I (to the extent it relies on Title VII and the ADEA), II, and III are DISMISSED WITH PREJUDICE.

**DONE** and **ORDERED** this 28th day of February 2020.

/s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE

---

[5] Even if Green's last day of work, rather than the day of the vote to terminate him, was a discrete discriminatory act, his EEOC filing would still be untimely. His last day was May 2, 2017, so the 180-day timely filing period would set the deadline at October 29, 2017, almost a month before Green actually filed his charges on November 27, 2017.